**ETHYL CORPORATION, and Charles C. Shepherd, Plaintiffs,**

v.

**David L. LADD, Commissioner of Patents, Defendant (two cases).**

**Civ. A. Nos. 3372-61, 200-63.**

United States District Court
District of Columbia.

Sept. 20, 1963.

Rhyne & Rhyne, Washington, D. C., John F. Sieberth, Baton Rouge, La., Arthur G. Connolly, Nathan Bakalar, Connolly, Bove & Lodge, Wilmington, Del., for plaintiffs.

Clarence W. Moore, Solicitor, Washington, D. C., for defendant.

JACKSON, Judge.

The above entitled actions were brought pursuant to the provisions of 35 U.S.C. § 145 praying this Court to authorize the defendant, Commissioner of Patents, to issue a patent to plaintiffs on alleged new and useful improvements in "Synergistic Antioxidant Compositions" as specified in claims 2, 3, 5 and 6 of Application Serial No. 550,787, filed December 2, 1955, which is the subject of Civil Action No. 3372–61, and claims 1, 2, 7 and 8 of Application Serial No. 154,018, filed November 21, 1961, which is the subject of Civil Action No. 200–63.

Both applications had been prosecuted separately in the Patent Office, and separate decisions denying patentability to all of the claims were rendered by the Board of Appeals. Subsequent thereto, after instituting the aforementioned civil actions in this Court, counsel for plaintiffs moved to consolidate both cases for trial. Counsel for defendant agreed, but indicated that no claims in the earlier filed action (Civ.Act. 3372–61) could be transferred to the latter (Civ.Act. 200–63), stating that in the event that the Court should decide that plaintiffs are entitled to a patent, the claims might be disposed of administratively.

Counsel for both parties have submitted briefs in which each side deals with both cases in a single brief. Since the concept of invention is identical in both applications, the Court will dispose of both cases in a single opinion.

Both applications set out that the invention relates to antioxidant compositions which purport to prevent deterioration by oxidation of alkyl lead antiknock compounds and gasoline in which such compounds are contained. The composition is a mixture of two gasoline antioxidants: N,N'-di-sec-butyl-p-phenylenediamine and 2,6-di-tert-butyl phenol in a weight ratio of 9:1 to approximately 1:9. Both of these compounds were admittedly known as antioxidants in the same environment. A minimum of about 10% by weight of either compound in the over-all amount is indicated to be operative.

In the specification of Application Serial No. 154,018 there is included a preferred ratio of from about 2:1 to about 3:1 in which the butyl phenol is from about 65% to about 75% of the entire mixture. Furthermore, there is set out a preference for phenols and cresols as solvents when the mixture of antioxidant is solid.

All of the involved claims are for composition. In Civil Action No. 3372–61 the claims are limited to gasoline which contains the mixture of antioxidant in stated specific ratios with respect to claims 2, 3 and 5, while claim 6 defines an anti-knock composition consisting essentially of an alkyl lead compound and a small amount of the two specific antioxidants in the same proportions as in claim 2. Claim 3 is illustrative and reads as follows:

"3. Gasoline containing an antiknock quantity of an alkyllead antiknock compound normally tending to deteriorate in the presence of oxygen containing, in amount sufficient to inhibit such deterioration, a small antioxidant quantity of a mixture of from one to nine parts by weight of N,N'-di-*sec*-butyl-*p*-phenylenediamine and from nine to one parts by weight of 2,6-di-*tert*-butyl-phenol."

The claims in Civil Action No. 200–63 define the mixture only with respect to the antioxidant mixture. Counsel for plaintiff have suggested that all claims in

that case stand or fall together except claims 7 and 8. Claims 1 and 7 are representative:

"1. A synergistic antioxidant composition consisting essentially of N, N' - di - sec - butyl - p - phenylenediamine and 2,6-di-*tert*-butylphenol, the weight ratio of N, N'-di-*sec*-butyl-p-phenylenediamine to 2,6-di-*tert*-butylphenol being from between about 9 to 1 to about 1 to 9 respectively."

"7. A synergistic antioxidant composition consisting essentially of a mixture of N,N'-di-*sec*-butyl-p-phenylenediamine and 2,6-di-*tert*-butylphenol, the weight ratio of 2,6-di-*tert*-butylphenol to N,N'-di-*sec*-butyl-p-phenlyenediamine being between 9:1 to about 1:9, such that when said mixture is normally a solid there are present minor amounts based on said 2,6-di-*tert*-butylphenol of a mixture of 2-*tert*-butylphenol and 2,4,6-tri-*tert*-butylphenol, as formulating solvent."

The pertinent prior art relied upon is as follows:

> Stillson et al. No. 2,459,397
> Dated: January 18, 1949
> Filed: May 16, 1945
>
> Von Bramer No. 2,436,838
> et al.
> Dated: March 2, 1948
> Filed: May 10, 1944
>
> Walters No. 2,395,382
> Dated: February 19, 1946
> Filed: May 1, 1943

Industrial and Engineering Chemistry, January 1950, Vol. 42, No. 1 "Alkyl Phenols and Antioxidants" by Rosenwald et al., pages 162–165.

The Stillson patent discloses that 2,6-di-tertiarybutylphenol stabilizes gasoline against oxidation change.

The Von Bramer patent discloses that N,N'-di-secondary butyl-p-phenylenediamine stabilizes tetraalkyl lead anti-knock compounds and motor fuels containing the same.

The patent to Walters describes improvement in oxidation stability of leaded gasolines by the addition of small quantities of a mixture of oxidation inhibitors consisting of an alkyl phenylenediamine and a tertiary butyl phenol.

The Rosenwald Publication describes the result of a study of the antioxidant effect of various alkyl phenols, including 2-tert-butyl phenol and 2, 4, 6-tri-tertiary butyl phenol.

The composition set out in the plaintiffs' claims as the antioxidant is a mixture of the compounds separately described in the Von Bramer et al. and Stillson et al. patents. The plaintiffs differentiate the mixture of their antioxidant from that of the Walters patent in specifying different tertiary butyl phenol.

Counsel for plaintiffs contend that invention resides in the use of a small amount of the mixture of two old chemicals of wide proportions with gasoline, leaded or unleaded, or with an alkyl lead anti-knock compound to stabilize such materials against oxidation.

However, it is to be seen from the involved specifications that the specifically named chemicals were old in commerce as antioxidants for gasoline or tetra-alkyl-lead anti-knock compounds. To be sure, those disclosures were shown in the Von Bramer et al. reference which suggests the use of the same phenylenediamine compound as plaintiffs, and in the Stillson et al. patent which teaches the use of the same tertiary butyl phenol as in the involved claims.

The Walters patent shows that if the specific phenylenediamine compound is mixed with a specific tertiary butyl phenol, a decided inhibiting action results.

Appearing at the trial on behalf of plaintiffs were two witnesses who qualified as experts in the art. One such witness, after discussing the history in the development and use of gasoline inhibitors in commerce since 1940, stated that as late as 1962 aviation specifications for the Army and Air Force had approved three additives, two of which are those

shown by plaintiffs, but as far as the witness knew such additives were employed singly and not together. Counsel for defendant properly contended that such commercial practice prior to the date of the references is immaterial and irrelevant since the real question here is whether one skilled in the art at the time the applications were filed, with knowledge of the Walters, Von Bramer and Stillson patents issued in 1946 and 1948 would combine the antioxidants of Von Bramer and Stillson in view of the teaching of Walters, or, as further argued by counsel for the defendant, would Walters' teaching of the use of a mixture of phenylenediamine antioxidant with a tertiary butyl phenol antioxidant suggest that the Stillson tertiary butyl phenol antioxidant could be substituted for the tertiary butyl phenol of Walters.

Walters taught that mixtures of particular antioxidants were more effective than when such compounds were used separately. When stating his opinion that it would not be obvious to try the Stillson compound in the Walters mixture, the witness stated that "synergism is not something you can predict". It is clear, however, that Walters defined a specific amine and a specific phenol.

The Court agrees with counsel for defendant that it is not invention but engineering skill which is utilized in substituting for the specific tertiary butyl phenol of Walters, the specific tertiary butyl phenol of Stillson when that phenol was known in the art as an antioxidant.

The fact that the synergistic effect by such substitution results in improvement has been held to be but a forward step in scientific experimentation which does not involve invention if the prior art reasonably taught or suggested the expediency thereof to an ordinary worker skilled in the art such as is suggested in the Walters patent. In re Krogman, 223 F.2d 497, 42 CCPA 1037.

■ The Court is well aware that the Patent Office is an expert tribunal staffed by persons of special training, experience and ability. That is so generally known the citation of cases is unnecessary. One of the witnesses for plaintiffs, as hereinbefore mentioned, disagreed with the tribunals of the Patent Office with respect to obviousness. The other expert expressed no personal opinion on that question, and it is, therefore, unnecessary to discuss his testimony. It is trite to mention that expert opinion is not binding upon the Court.

■ It appears to the Court that to one of ordinary skill in the art, it would be obvious to employ the mixture of the antioxidant shown in the Von Bramer et al. and Stillson et al. patents in view of the teaching of Walters. Furthermore, the substitution of the tertiary butyl phenol of Stillson for the tertiary butyl phenol of Walters would be obvious.

As to claims 2, 3, 5 and 6 of Serial No. 550,787 and claims 1 and 2 of Serial No. 154,018, the subject matter there disclosed would be obvious to one ordinarily skilled in the art in view of the Walters, Stillson and Von Bramer references. Therefore, it is clear to the Court that these claims are unpatentable.

Claims 7 and 8 of Application Serial No. 154,018 differ from the other claims of that application in that they include specific phenols as solvents if the primary mixture is solid. These phenols are taught in the Rosenwald reference to be antioxidants for gasoline, and their use would be obvious to a person of ordinary skill in the art. Therefore, claims 7 and 8 in that application are held to be unpatentable over the prior art.

■ Claims 1, 2, 7 and 8 of Application Serial No. 154,018, and claims 2, 3, 5 and 6 of Application Serial No. 550,787 define only a single invention. Therefore, the claims of Application Serial No. 154,018 are not patentably distinct from the other involved application.

In view of what has hereinbefore been stated, the Court holds that the plaintiffs are not entitled to a patent containing any of claims 2, 3, 5 and 6 of Application Serial No. 550,787, and further, that plaintiffs are not entitled to a patent containing any of the claims 1, 2, 7 and 8 of Application Serial No. 154,018. There-

fore, the Complaints in Civil Action No. 200–63 and Civil Action No. 3372–61 should be dismissed.

The foregoing Opinion constitutes Findings of Fact and Conclusions of Law.